IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BERNARD PARSON,

        Petitioner,

v.                                                        CIV 03-764 MV/KBM

PATRICK SNEDEKER, Warden, et al.,

        Respondents.

# **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

      This matter is before the Court on Bernard Parson's petition seeking habeas relief under 28 U.S.C. § 2254, *Doc. 1,* following his exhaustion of his state remedies and a lift of the stay previously entered. Because he filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case. *E.g., Upchurch v. Bruce,* 333 F.3d.1158, 1162-63 (10th Cir.), *cert. denied,* 124 S. Ct. 839 (2003); *Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999).

      I find Petitioner's claims without merit under the applicable standards and recommend that it be dismissed with prejudice. All of the issues can be resolved on the record and, therefore, an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); Rule 8(a), Rules Governing Habeas Corpus Under Section 2254.

## **I. Factual & Procedural Background**

      A jury convicted Petitioner of one count of trafficking cocaine and one count of

conspiracy to traffic cocaine. Including the enhancement for being a habitual offender, the state court[1] sentenced him to a total of thirteen years imprisonment, and suspended all but six years of the sentence. *Doc. 12,* Exh. A.

At trial, the State did not enter the drugs into evidence or enter a toxicology report concerning the tests on the substance, apparently because they had been lost. *See id.,* Exh. E at 5. The evidence before the jury consisted entirely of the testimony of two officers whose testimony was consistent. The officers indicated that while working undercover, they asked Petitioner if he could assist them in buying crack cocaine. Petitioner agreed, leaving the people he was accompanying at the time and going with the officers in their vehicle. Parson then asked them to stop at an ATM machine so he could retrieve money. , and he thereafter instructed them to drive to a particular residence. Finding no one at home, Parson directed them to a second residence.

At that residence, Petitioner went inside and returned with a female named Susana Hernandez, who Petitioner also sometimes refers to as "Susana Lindley." Petitioner told the officers that they should pay $60.00 toward the purchase of the crack cocaine and that he would contribute $40.00. Parson gave his $40.00 to Hernandez, who then entered the officers' vehicle. Hernandez instructed the officers where to go, entered that third residence, returned with the cocaine, and gave the officers three "rocks." They then drove her back to the residence where they had left Petitioner. The officers observed Petitioner and Hernandez "meet" but did not actually observe her give any drugs to Petitioner. The officers informed Petitioner and Hernandez that they had to leave, and proceeded to the police office where the "rocks" they had been given

---

[1] The Honorable Robert C. Brack presided over the state court proceedings. Judge Brack now serves as a United States District Judge for the District of New Mexico.

by Hernandez field tested positive for cocaine. The evidence was secured in a vault and later sent to the laboratory for testing. *See id.,* Exh. C at 2-3; *id.,* Exh. E at 2 (incorporating statement of facts from docketing statement).

Petitioner did not testify at trial and was convicted on both courts. His State Public Defender trial counsel filed a docketing statement that raised sufficiency of the evidence claim, and someone from the State Public Defender Appellate Division thereafter undertook Petitioner's representation on appeal. Parson told appellate counsel that Hernandez is a "well-know user of crack cocaine" and, contrary to the officers' testimony, Petitioner did not fetch her from the house. Rather, Parson said that Hernandez approached the vehicle on her own accord. "[W]hen she heard them talking about drugs she decided to accompany them of her own accord, for her own benefit." *Id.,* Exh. E at 4. In short, Parson's version recounts that even though he admittedly agreed to "try" and "hook" the officers up with "some rocks," Hernandez took over the venture for "her own benefit and gain." *Doc. 1* (attached "Summary" at 3, 4).

Parson further told appellate counsel that his trial attorney "admitted during trial that he never once spoke" to Hernandez, and by referring to her by different names during trial lead the jurors to believe that several women were involved. *Doc. 12,* Exh. E at 7. Petitioner also asserted that counsel neglected to inform the jury that Petitioner dated Hernandez several years earlier, had maintained a close relationship with her children, and given the homeless Hernandez money on "four or five occasions." *Id.* He further claimed that his trial attorney directed him to sign a "stipulated agreement to verify that the state had presented evidence during trial," but that he refused to do so. *Id.* The Public Defender then moved to amend the docketing statement to argue that Parson's trial attorney was ineffective because (1) counsel did not interview Hernandez

3

or present evidence about her prior relationship with Petitioner or her drug use and homelessness, and (2) counsel attempted to direct him to sign what he believed was a stipulated agreement to verify that the state presented evidence during trial.

The state court denied amendment because the allegations were not of record, and also because his "allegations do not establish that counsel was incompetent or that Defendant was prejudiced by the actions of counsel." *Doc. 12,* Exh. F at 4. The New Mexico Court of Appeals also rejected the sufficiency claim. *Id.,* Exh. F. The New Mexico Supreme Court denied certiorari. *See id.,* Exhs. G-I.

Petitioner did not pursue state post-conviction proceedings and, instead, followed with a *pro se* federal petition, where he raised the same two issues – sufficiency of the evidence and ineffective assistance of counsel. This Court stayed the federal proceedings to allow Petitioner to exhaust his state post-conviction remedies. *See Doc. 13.*

In those state court proceedings, the trial judge denied the petition *sua sponte* "finding as a matter of law that the Movant is not entitled to relief prayed for in that Petition." *Doc. 16,* Exh. K. The New Mexico Supreme Court ordered a response to the petition for certiorari. *See id.,* Exhs. L-M. The New Mexico Supreme Court "considered the petition and response" and denied certiorari without further discussion. *Id.,* Exh. O. Having exhausted state post-conviction remedies, Petitioner alerted this Court to the fact that state proceedings were concluded by filing another federal petition. *See Docs. 1, 14.* Respondents also supplemented their original Answer and motion to dismiss. *See Docs. 10-12, 15-16.*

## **II. The Claims Raised In This Federal Proceeding**

I consider the second petition, which was docketed as an "amended" petition, as a

supplement to the first petition. I have considered the two documents together and have construed them liberally to set forth two claims.

First, Parson contends that the evidence was insufficient to support a conviction for trafficking or conspiracy to traffic[2] against him on several grounds. The State did not introduce any actual drugs as evidence at trial. There was no direct evidence that Petitioner physically possessed the drugs. Parson maintains that the money he gave to Hernandez was intended to purchase drugs for her use alone and that she decided "of her own accord" to accompany the officers after overhearing them talking about drugs.

Parson states that Hernandez alone bought the drugs, that she alone "transferred" the drugs to the officers, and that she subsequently was arrested in a drug sting operation for trafficking. In short, Petitioner maintains that he only accepted the ride from the officers because his friends had abandoned him at that convenience store where he encountered them, they solicited his help in procuring drugs and, although he offered to help them do so, he abandoned the endeavor when Hernandez stepped into the picture. *See Doc. 1* at 6-6E (if numbered sequentially); *Doc. 14* ("Summary of the Night in Question" at 1-2).

Second, for his ineffective assistance of trial counsel claim, Petitioner asserts that trial counsel did not review the surveillance videotape from the convenience store or interview the witnesses that Petitioner suggested could corroborate his version of the events. Moreover, he

---

[2] As mentioned later, at several places in the March 18, 2004 Petition, Parson now appears to concede that there was sufficient evidence for the conviction on the conspiracy charge *See e.g. Doc. 14* at 6 ("'Conspiracy I agree' but trafficking is an unjust conviction."), and *id.* at 7 ("My original arrest warrant for conspiracy to committ (sic) a felony was a fair and valid charge."). Out of an abundance of caution, however, I will assume Parson seeks review on both convictions.

asserts that counsel did not discuss a plea bargain with him. *See Doc. 1* at 7-7C (if numbered sequentially); *Doc. 14* ("Response To Supreme filed Jan 28th 2004" and "Summary of the Night in Question" at 3-6).

## III.  AEDPA Standard Of Review

Reviewing a petition through the "lens" of AEDPA, a federal court cannot grant a writ of habeas corpus unless: (1) the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" Supreme Court precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2). The Supreme Court has construed and reiterated the proper application of these statutory provisions over the course of several recent opinions. *See Mitchell v. Esparza,* ___ U.S. ___, 124 S. Ct. 7 (2003) (*per curiam*); *Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527 (2003); *Price v. Vincent,* 538 U.S. 634, 123 S. Ct. 1848 (2003); *Lockyer v. Andrade,* 538 U.S. 63 (2003); *Woodford v. Visciotti,* 537 U.S. 19 (2002) (*per curiam*); *Early v. Packer,* 537 U.S. 3 (2002) (*per curiam*), *rehearing denied,* 537 U.S. 1148 (2003); *Bell v. Cone,* 535 U.S. 685 (2002); *Williams v. Taylor,* 529 U.S. 362 (2000); *see also Miller,* ___ F.3d ___, 2004 WL 96739 (10th Cir. 2004).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in § 2254(d)(1) "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer,* 538 U.S. at 71 (quoting *Williams,* 529 U.S. at 412). Thus, "whatever would qualify as an old rule under . . . *Teague* jurisprudence will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States' under § 2254(d)(1) . . . [except that,] as the statutory

6

language makes clear, . . . § 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams,* 529 U.S. at 412.

A state decision is "contrary to" Supreme Court precedent if it "'applies a rule that contradicts the governing law set forth in [those] cases.'" *Price,* 538 U.S. 634, ___, 123 S. Ct. at 1853 (quoting *Williams,* 529 U.S. at 405); *see also Mitchell,* ___ U.S. ___, 124 S. Ct. at 10 (same); *Williams,* 529 U.S. at 406 (citing as an example that changing burden of proof for prejudice under *Strickland* standard would be "'diametrically different,' 'opposite in character or nature,' and 'mutually opposed' . . . to our clearly established precedent"); *id.* at 413 ("a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law").

A state decision is also "contrary to" Supreme Court precedent if it "'confronts a set of facts that are materially indistinguishable from a decision . . . and nevertheless arrives at a result different [from the decision].'" *Price,* 538 U.S. 634, ___, 123 S. Ct. at 1853 (quoting *Williams,* 529 U.S. at 406); *see also Mitchell,* ___ U.S. ___, 124 S. Ct. at 10 (same); *Williams,* 529 U.S. a 413 (decision is "contrary to" if the "state court decides a case differently than [the Court] has on a set of materially indistinguishable facts.").

However, a decision is not "contrary to" "simply because the [state] court did not cite [Supreme Court] opinions. . . . [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell,* ___ U.S. ___, 124 S. Ct. at 10 (quoting *Early,* 532 U.S. at 8); *Woodford,* 537 U.S. at 24 (noting "the presumption that state courts know and follow the law"); *see also Miller,* ___ F.3d. ___, ___, 2004 WL 96739 at *3-4 (federal court applies AEDPA standard

7

"notwithstanding the [state courts'] failure to cite or discuss federal case law.").

Indeed, a state court need not even discuss a claim for the AEDPA standards to apply. So long as the state court does not dismiss a claim on procedural grounds, this Court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision."[3] Thus, if a state court's reasoning and/or its result do not contradict established Supreme Court precedent, a decision is not "contrary to" simply because the federal court holds a different view where the Supreme Court precedent "is, at best, ambiguous." *See Mitchell,* ___ U.S. ___, 124 S. Ct. at 11.

A state decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413; s*ee also e.g., Lockyer,* 538 U.S. at 75. However, "it is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court" applied "clearly established federal law erroneously or incorrectly." *Lockyer,* 538 U.S. at 75-76 (internal quotations and citations omitted). "Rather, that application must be objectively unreasonable." *Id.*

Finally, a state decision rests on an "unreasonable determination of the facts" where it is

---

[3] *See Cook v. McKune,* 323 F.3d 825, 831 (10th Cir. 2003); *see also in Chadwick v. Janecka,* 312 F.3d 597, 606 (3rd Cir. 2002) (discussing that in *Weeks v. Angelone,* 528 U.S. 225 (2000), Supreme Court applied AEDPA standards of review to claim state court dismissed summarily; Fourth Circuit had specifically held that AEDPA applies to summary dispositions), *cert. denied,* 123 S. Ct. 1914 (2003); *compare Morris v. Burnett,* 319 F.3d 1254, 1267 (10th Cir.) (if the "state court addresses the great bulk of the issues raised by the petitioner's brief in that court but omits to address a particular claim, we have inferred that the claim was not decided 'on the merits' in the state court" and therefore do not apply the AEDPA standards of review), *cert. denied,* 124 S. Ct. 284 (2003).

8

shown by "clear and convincing evidence," 28 U.S.C. § 2254(e)(1), that the factual finding is erroneous. *Wiggins,* 539 U.S. at ___, 123 S. Ct. at 2539; *see also e.g., Toles v. Gibson,* 269 F.3d 1167, 1182 (10th Cir. 2001) (findings of historical fact entitled to presumption of correctness unless overcome by clear and convincing evidence), *cert. denied,* 538 U.S. 948 (2003).

## II. Analysis

### *A. Sufficiency Of The Evidence*

Sufficiency of the evidence issues are resolved as questions of law under AEDPA. In other words, I must determine whether the state court's decision that the evidence was sufficient is "contrary to or an unreasonable application of *Jackson* [*v. Virginia,* 443 U.S. 307 (1979)]." *Spears v. Mullin,* 343 F.3d 1215, 1238 (10th 2003), *cert. denied,* 124 S. Ct. 1615 (2004); *see also Torres v. Mullin,* 317 F.3d 1145, 1151-52 (10th Cir.), *cert. denied,* 124 S. Ct. 562 (2003); 28 U.S.C. § 2254(d)(1). Under *Jackson,* the relevant inquiry is whether, after viewing all of the evidence "in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis original). "The *Jackson* standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Spears, supra* (quoting *Jackson,* 443 U.S. at 319). Accordingly, this Court can neither reweigh the evidence nor substitute its judgment for that of the jury. *E.g., Barbee v. Calbone,* 15 Fed. Appx. 752, 755 (10th Cir. 2001); *Wingfield v. Massie,* 122 F.3d 1329, 1332 (10th Cir. 1997), *cert. denied,* 523 U.S. 1005 (1998).

"Conspiracy consists of knowingly combining with another for the purpose of committing a felony." N.M. STAT. ANN. § 30-28-2 (Michie 1994). The essential element of conspiracy is an

9

agreement to commit the crime. *See, e.g.,* N.M. UNIFORM JURY INSTRUCTIONS -- CRIMINAL § 14-2810 (and committee commentary). "Trafficking" a controlled substance includes "***distribution,*** sale, barter or giving away of any controlled substance," and is a felony. N.M. STAT. ANN. § 30-31-20 (A)(2) (Michie 1997) (emphasis added).

Noting evidence that Petitioner agreed to help the officers procure drugs and that he gave Hernandez money with which to buy the drugs and that crack cocaine was delivered to the officers, the New Mexico Court of Appeals found sufficient evidence to sustain the conspiracy charge. *Doc. 12,* Exh. F at 3 ("sufficient to show that there was an implied understanding between the officers, Defendant, and the buyer to accomplish the crime of distributing, selling, or bartering for drugs."). Petitioner does not dispute that he agreed to help the officers buy drugs. Indeed, in federal petitions, Parson states that: "I did attempt to help them percurr (sic) some drugs;"[4] "they said [they wanted to buy] some rocks. My exact words was, I don't really know but I can try. That's when I direct them to one location where their (sic) known to sell drugs. No one was there, that's when I directed them to where they could drop me off;"[5] Hernandez "asked me who the two guy's (sic) were. My exact word's (sic) were their (sic) looking for the same shit you do;"[6] and that "he [Petitioner] gave money to Ms. Hernandez to purchase whatever she wanted."[7] Accordingly, I find that the state court's decision on the conspiracy charge is neither contrary to clearly established Supreme Court precedent.

---

[4] *Doc. 14* ("Summary of the Night In Question" at 3).

[5] *Doc. 1* at 6C (if numbered sequentially).

[6] *Doc. 14* ("Summary of the Night In Question" at 2).

[7] *Doc. 1* at 6B (if numbered sequentially).

Petitioner's main complaint concerns the sufficiency of the evidence with respect to the trafficking charge. That count that carried a ten-year sentence as opposed to the three-year sentence for conspiracy. *See id.,* Exh. A. As for the argument that it was Hernandez and not Petitioner who "caused the transfer" of the drugs to the officers, the New Mexico Court of Appeals reasoned that the evidence was sufficient.

> Initially, we note that in the docketing statement, Defendant stated that the officers drove the buyer "back to the residence where [Defendant] had been waiting and delivered two rocks" to Defendants. [D.S. 2] The officers also received "rocks" from the buyer, and a test of the "rocks" revealed that they were crack cocaine. Even if the officers did not actually observe the buyer hand the drugs to Defendant, there was sufficient evidence for the fact finder to infer that Defendant received drugs from the buyer. There was evidence that Officer Salbidrez was listening to ***Defendant instruct the buyer to go with the officers to purchase the drugs. There was evidence that the buyer took the money from Defendant, along with money from the officers, went into a residence, and upon her return, handed three rocks of crack cocaine to the officers.*** The buyer then met with Defendant. It could be inferred that the buyer used money from the officers and from Defendant to purchase drugs, delivered part of the drugs to the officers, and delivered drugs to Defendant.

*Id.,* Exh. F at 2-3 (emphasis added).

"Distribution" refers to the delivery of a controlled substance. N.M. STAT. ANN. § 30-31-2 (J). "Deliver" in this context "means the actual, *constructive* or attempted transfer from one person to another of a controlled substance . . . where or not there is an agency relationship." *Id.,* § 30- 31-2 (G) (emphasis added). The uniform jury instruction for distribution focuses on the elements of knowingly "transferring" a controlled substance. The commentary notes the statutory definitions of distribute and deliver, and provides that "'[t]ransfer' is a word in common usage which will not ordinarily require further definition. If a definition is requested by the jury a

11

dictionary definition should be given." *See* N.M. UNIFORM JURY INSTRUCTIONS -- CRIMINAL § 14-3103.

Viewing the evidence in light most favorable to the prosecution and given New Mexico's comprehensive definition of distribution, I conclude that the state court's decision on sufficiency is not an unreasonable application of the *Jackson* standard. Petitioner admittedly agreed to help the officers purchase drugs, and gave money toward the endeavor to an accomplice who consummated the agreement. Contrary to his assertions, Parson did not actually have to have possession of the drugs and personally transfer them to the officers to be found guilty of the offenses. *See e.g., State v. Bankert,* 117 N.M. 614, 618-20, 875 P.2d 370, 374-76 (1994) (discussion of constructive possession), *cert. denied,* 525 U.S. 950 (1998); *State v. McHorse,* 85 N.M. 753, 756-57, 517 P.2d 75, 78-79 (Ct. App. 1973) (discussion of constructive transfer). Thus, any rational juror could have found Petitioner guilty of trafficking as well as conspiracy to do the same.

### B. Ineffective Assistance Of Counsel

The two-prong test announced in *Strickland v. Washington,* 466 U.S. 668 (1984), governs ineffectiveness claims and is "clearly established" federal law for AEDPA purposes. *See, e.g., Wiggins,* 539 U.S. at ___, 123 S. Ct. at 2535-36. An ineffective assistance of counsel claim fails if either of the *Strickland* prongs are not met. It is entirely appropriate for a habeas court to analyze the prejudice prong first and exclusively, if that is the easier course. *E.g., Scoggin v. Kaiser,* 186 F.3d 1203, 1207 (10th Cir.), *cert. denied,* 528 U.S. 953 (1999); *Cooks v. Ward,* 165 F.3d 1283, 1292-93 (10th Cir. 1998), *cert. denied,* 528 U.S. 834 (1999).

Parson must first show that counsel's representation was "objectively unreasonable."

12

*E.g., Wiggins*, 539 U.S. at ___, 123 S. Ct. at 2535. In doing so, he must overcome the "strong presumption" that counsel's conduct falls within the "wide range" of conduct that is considered to be trial strategy and is deemed "reasonable professional assistance." To be constitutionally ineffective, counsel's conduct "must have been completely unreasonable, not merely wrong." *Bullock v. Carver,* 297 F.3d 1036, 1046-50 (10th Cir.) (and recent decisions cited therein), *cert. denied*, 573 U.S. 1093 (2002).

Parson must also establish "prejudice" – that is, absent counsel's errors, there is a "reasonable probability" that the outcome of the proceeding would have been different. *E.g., Wiggins,* 539 U.S. at ___, 123 S. Ct. at 2542. "Reasonable probability" means that confidence in the outcome is undermined. *E.g., id.; see also Foster v. Ward,* 182 F.3d 1177, 1185 (10th Cir. 1999), *cert. denied,* 529 U.S. 1027 (2000).

Petitioner's first claim – that trial counsel failed to investigate things and people that would have corroborated his version of the facts – is straightforward and fails both prongs. Because the asserted facts did not contradict the evidence that supported the verdicts, or give rise to the legal defenses of withdrawal from the conspiracy[8] or entrapment,[9] counsel was neither

---

[8] In New Mexico, because the crime of conspiracy is complete upon the agreement and no further overt act is required, withdrawal is not a defense once the agreement is reached. *See* N.M. UNIFORM JURY INSTRUCTIONS -- CRIMINAL § 14-2810 (committee commentary); *id.*, § 2816 (committee commentary). Furthermore, for the defense to apply, Petitioner must have shown that he either "in good faith notif[ied] the others he knows are involved that he is no longer in the conspiracy and urge[d] them to give it up" or "ma[d]e proper efforts to prevent the carrying out of the conspiracy and end his participation in such a way as to remove the effect of his assistance." *Id.,* § 14-2816. His version of the facts meets neither standard.

[9] Here Petitioner's version of the events establishes that the officers did not put him "under extraordinary temptation" and "shows only that [he] was given an opportunity to commit a crime which he was already willing to commit." *State v. Ontiveros,* 111 N.M. 90, 93, 801 P.2d 672, 675 (Ct. App.), *cert. denied,* 111 N.M. 77, 801 P.2d 659 (N.M. 1990); *see also e.g.,* N.M. UNIFORM JURY INSTRUCTIONS --

ineffective and Petitioner was not prejudiced by counsel's alleged failures. Therefore, I cannot conclude that the state courts' result is contrary to or an unreasonable application of *Strickland.*

As for plea negotiations, the record from the post-conviction proceedings, where he discussed the claim in more detail, conclusively establishes that the claim is without merit under the AEDPA standard of review. There, Petitioner contended that the trial judge "ordered" Petitioner's attorney to discuss a plea bargain with Defendant, but that trial counsel did not do so "forcing" Defendant to go to trial. *See Doc. 16,* Exh. L. (attached Exhibit "A" labeled "Statement of Facts . . . Ineffective Assistance of Counsel" at 11). Interspersed in his hand-written submission are excerpts of notes from a state court tape log. They provide:

> CP–It's Cal's case. Notes indicate no plea discussion with prosecutor in charge. Dft. is unhappy with nature of charges and process, Cal's representation, the State, and everyone involved. He wants a motion to dismiss this morning. CP not in a position to do that.
>
> DFT – This is a bogus case/Court gives ten days to discuss plea. Go to trial on March 25, can do in a day.

*Id.* at 14.[10]

Failure to notify a client of the prosecution's offer of a plea can constitute ineffective assistance of counsel. *See Doc. 13* at 4; *see also Griffin v. United States,* 330 F.3d 733, 737 & n.2 (6th Cir. 2003) (an authorities cited and discussed therein). Likewise, counsel's failure to engage in plea negotiations can also constitute ineffective assistance of counsel under certain

---

CRIMINAL § 14-5160 (and committee commentary); *id.,* § 14-5161 (and committee commentary); *Doc. 16,* Exh. N at 10-14 (and discussion of facts and authorities therein).

[10] Contrary to Respondents' suggestion in post-conviction proceedings, I believe that this is the first time this Court has seen this language.

14

circumstances. *E.g., United States v. Hockaday,* 2004 WL 421741 at *4 (N.D. Ill. 2004) (citing *United States v. Boone,* 62 F.3d 323, 327 (10th Cir.), *cert. denied,* 516 U.S. 1014 (1995), and *Beans v. Black,* 757 F.2d 933, 937 (8th Cir.), *cert. denied,* 474 U.S. 79 (1985)).

For the purposes of discussion only, I will suppose that counsel did not heed a trial judge's order to engage in negotiations or alternatively did not enter into plea discussions within the deadline imposed by the trial date. That failure constitutes, at most, an error of state law of the sort that is not a cognizable ground for habeas relief. [11]

Moreover, Petitioner cannot establish prejudice and the claim therefore fails for several independent reasons. First, Parson does not allege that the prosecutor was willing to enter into plea negotiations. Because Petitioner has no access to the state court record or to discovery in this matter, it is Respondents who can best speak to proof (or lack thereof) of this evidentiary point in the present posture of the case. They have chosen not to do so. Even so, it is Petitioner who bears the burden in this habeas proceeding.

Petitioner also makes no assertion that if the prosecutor would have been willing to enter into negotiations, Parson himself would have entered a plea. To the contrary, he maintained at the trial proceedings and to this day that he is not guilty of the "bogus" charges. Accordingly, he

---

[11] Even if it was assumed to qualify as "deficient conduct" under federal constitutional law, the claim would still fail. *See United States v. Torres*, 25 Fed. Appx. 797, 801 (10th Cir. 2002) ("Mr. Graves asserted ineffective assistance of counsel alleging that his trial attorney provided ineffective assistance because he failed to convey a plea offer from the Government and allowed an unspecified plea deadline to lapse. The district court found Mr. Graves's description of the supposed plea offer to be vague and unspecific and therefore concluded that Mr. Graves could not overcome the presumption that counsel made sound strategic decisions and that counsel's conduct fell within the wide range of reasonable, professional assistance.").

15

fails to sustain his burden on the prejudice prong.[12]

Finally, I have found no Supreme Court precedent, much less clearly established Supreme Court precedent, on the issue of ineffectiveness and prejudice in the context of a claim of failure to engage in plea negotiations. As such, the state court's result cannot, by definition, meet either of the two AEDPA criteria that are prerequisites for habeas relief.

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2254 petition be dismissed with prejudice.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

---

[12] *See Boone,* 62 F.3d at 327 ("Mr. Greenfield also claims that counsel was ineffective because he failed to negotiate a plea with the prosecutor. Even if we assume, without deciding, that counsel's failure to negotiate with the prosecutor amounted to deficient performance under *Strickland,* Mr. Greenfield fails to satisfy the prejudice requirement. Without any showing that the prosecution was willing to enter plea negotiations with Mr. Greenfield's counsel, or that such plea would have been acceptable to the court, or that the resulting sentence would have been different than that imposed under the Sentencing Guidelines, all that the Defendant urges is speculation, not a reasonable probability that the outcome would have been different Accordingly, he cannot establish prejudice."); *Beans,* 757 F.2d at 936-37 ("Here, Giese attempted to discuss the possibility of a plea bargain with both the prosecutor and appellant, but neither was interested. Giese did not have a duty to attempt to force them from their intransigent positions. In sum, we find that Beans has failed to prove that the acts of his attorney were not the acts of reasonably competent counsel and that he was prejudiced thereby."); *Gluzman v. United States,* 124 F. Supp. 2d 171, 178 (S.D.N.Y. 2000) ("Where the government does not offer a plea, and where the client insists that she did not participate in the crime, a failure successfully to negotiate a plea does not amount to ineffective assistance of counsel.").